UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
LAUREN KOENIG,                                    :
                                                  :
                      Plaintiff,                  :
                                                  :   **MEMORANDUM DECISION AND**
              -against-                           :   **ORDER**
                                                  :
CELITECH, INC., and RICHARD                       :    26-cv-90 (BMC)
BRATTON,                                           :
                                                  :
                      Defendants.                 :
------------------------------------------------------------- X

**COGAN**, District Judge.

This employment discrimination suit is before the Court on defendants' motion to dismiss. Plaintiff was the only female executive working for defendants and, from that, she concludes that her termination was a result of gender discrimination. But the fact that an employee is the only member of a protected class that works for an employer does not transmogrify every adverse management decision into actionable discrimination. Accordingly, defendants' motion to dismiss is granted.

<strong>SUMMARY OF AMENDED COMPLAINT</strong>

About four years ago, plaintiff was hired by defendant Celitech, Inc. ("Celitech") to assist with business development and marketing, at a salary of $120,000 per year plus benefits. Plaintiff frequently worked and traveled with defendant Richard Bratton ("Bratton"), Celitech's Chief Commercial Officer ("CCO").

For the bulk of her time at Celitech, plaintiff was the only female employee. Not long after she joined, Ahmad Fares ("Fares"), Celitech's Chief Executive Officer ("CEO") told her she might one day become a Co-Founder. And indeed, around her one-year mark, Fares named plaintiff Co-Founder, making her Celitech's first (and to date, only) female executive.

A month after becoming Co-Founder, plaintiff's house was destroyed in a fire. Nonetheless, she continued traveling for work and living in temporary housing.  The next year, Bratton and Fares told plaintiff that she needed to move to New York, so that she could more easily meet with investors and clients.  Her time in New York was successful, and she brought in hundreds of thousands of dollars in investments.

Around a year after moving to New York, plaintiff was starting to feel burnt out.  She expressed to Bratton and Fares that she was experiencing "severe anxiety."  To plaintiff's disappointment, her workload remained the same.[1]

Plaintiff's demanding work schedule was not the only problem she endured while working for Celitech.  Part of her duties included traveling to conferences, sometimes overseas. Frequently, Bratton travelled with her; and always, according to plaintiff, Bratton would drink too much.  This happened in Arizona, Germany, and twice in Portugal.  Because of the overdrinking, Bratton would "verbally abuse" plaintiff and, in one incident in Portugal, struck plaintiff, knocking her phone out of her hand.  This incident was captured on video and audio, and plaintiff can be heard saying "I am never talking to you again."

Despite the demanding work schedule and troubling relationship with Bratton, plaintiff kept at it until she reached her breaking point, and effectively demanded some time away from work.  Bratton was apparently receptive and suggested she take eight days off.  When plaintiff put her out-of-office status on her calendar, however, Fares expressed surprise that she would take time off "right after a conference."  Subsequently, Fares removed plaintiff from a board call

---

[1] In the complaint, plaintiff states "no accommodations were offered to her."  It is unclear whether plaintiff asked for reasonable, or indeed any, accommodations, but even if she did, it is irrelevant because plaintiff brings no claims on a failure-to-accommodate theory.

and a meeting with a potential investor.[2]  While on leave, Bratton "bombarded" plaintiff with work requests.  Plaintiff was terminated after she complained about Bratton's bombardment.

### DISCUSSION

Based on the above allegations, plaintiff brings claims for gender discrimination in violation of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"); hostile work environment in violation of the NYSHRL and NYCHRL; negligent supervision and retention under the common law; and general civil liability under Article 483 of the Portuguese Civil Code.  All of her claims are brought against Celitech only, except for the Portuguese claim, which is brought against Bratton only.  Defendants have moved to dismiss the latter for lack of jurisdiction and the former for failure to state a claim.

### I.      Personal Jurisdiction

#### A.      Legal Standard

On a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction over the defendant." MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012).  To survive, plaintiff must make a *prima facie* showing of jurisdiction based on "(1) procedurally proper service of process, (2) 'a statutory basis for personal jurisdiction that renders such service of process effective' and (3) that 'the exercise of personal jurisdiction . . . comport with constitutional due process principles.'" Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd., 808 F. Supp. 3d 609, 614 (S.D.N.Y. 2025) (quoting Waldman v. Pal. Liberation Org., 835 F.3d 317, 327 (2d Cir. 2016)).

---

[2] In the complaint, plaintiff describes these actions as relating to "a course of retaliatory conduct."  It is unclear whether removing plaintiff from the meetings was the "retaliation" or if she was removed simply because she was on leave at the time of those meetings.  Nonetheless, it is irrelevant because plaintiff brings no claims for retaliation.

**B.     Analysis**

Because the due process question is dispositive, the Court need not consider the other requirements.  See Waldman, 835 F.3d at 343 ("[T]he statutory requirement for service of process" "does not answer the constitutional question of whether due process is satisfied").  To that end, there are "two exercises of personal jurisdiction: general jurisdiction and specific jurisdiction."  Id. at 331 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).

                    i.     *General Jurisdiction*

General jurisdiction exists "only when the defendant's affiliations with the [forum state] 'are so constant and pervasive "as to render [him] essentially at home in the forum [state]." Id. (quoting Daimler AG v. Bauman, 571 U.S. 117, 122 (2014)).  "For general jurisdiction . . . [the individual] must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction."  Reich v. Lopez, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014).

Here, there is no general jurisdiction over Bratton because he is a resident of Connecticut, was not served in New York,[3] and has not consented to jurisdiction.  See id.

                    ii.    *Specific Jurisdiction*

"Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  New York's long-arm statute, CPLR § 302, confers

> specific jurisdiction over non-[residents] "who, in person or through an agent . . .
> (i) transacts business within the state or contracts anywhere to supply goods or
> services in the state, (ii) commits a tortious act within the state . . . [or] (iii)

---

[3] Bratton waived service of process, which "establishes personal jurisdiction over a defendant" for "a claim that arises under federal law."  Fed. R. Civ. P. 4(k)(2).  Because the only claim against Bratton arises under foreign law, his waiver would establish personal jurisdiction if Bratton were subject to the general jurisdiction of New York courts.  See Fed. R. Civ. P. 4(k)(1)(A).  However, as discussed, no such general jurisdiction exists.

> commits a tortious act without the state causing injury to person or property within the state[,]" if the claim arises from those transactions.

Adwar Casting Co. v. Star Gems, Inc., 342 F. Supp. 3d 297, 301 (E.D.N.Y. 2018) (quoting N.Y. CPLR § 302). "New York courts have routinely dismissed foreign tort claims . . . for lack of personal jurisdiction." H.H. v. Hyatt Hotels Corp., 2024 WL 3539537, at *3 (S.D.N.Y. July 25, 2024) (collecting cases). This is because, when

> an American plaintiff is injured abroad, it will often be easy for the plaintiff to cite some downstream . . . harm suffered in the United States (where the plaintiff lives or is headquartered), and in those circumstances, courts must take care to distinguish the initial injury caused by the defendant's allegedly tortious conduct from the less immediate downstream consequences of that injury.

Atlantica Holdings, Inc. v. Sovereign Wealth Fund, 813 F.3d 98, 113 (2d Cir. 2016).

Here, there is no specific jurisdiction over Bratton. Although plaintiff cites a litany of "New York-related conduct" by Bratton, she fails to connect that conduct to her only claim against him, *i.e.*, his alleged tort in Portugal. The tort was obviously not committed in New York, and all of plaintiff's alleged injuries resulting therefrom are kind of the "downstream consequences" contemplated by (and barred under) Atlantica Holdings, 813 F.3d 98 at 113. See DeLorenzo v. Viceroy Hotel Grp., LLC, 757 F. App'x 6, 10 (2d Cir. 2018) (No personal jurisdiction in tort action over foreign hotel where plaintiff was sexually assaulted). Accordingly, the Court grants defendants' motion to dismiss plaintiff's claim against Bratton.

## II.     Failure to State a Claim

### A.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In deciding such a motion, the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).  Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### B.     Gender Discrimination

"The NYCHRL and NYSHRL make it an 'unlawful discriminatory practice' for an employer to . . . 'discriminate against [an employee] in compensation or in terms, conditions, or privileges of employment' based on 'gender.'" Mumin v. City of N.Y., 760 F. Supp. 3d 28, 55 (S.D.N.Y. 2024) (quoting N.Y.C. Admin. Code § 8-107(1)(a); N.Y. Exec. L. § 296(1)(a)).

"To state a claim for gender discrimination under the NYCHRL [and NYSHRL], a 'plaintiff need only show differential treatment,'" id. (quotations omitted), *i.e.*, that "she was treated less well, at least in part for a discriminatory reason." Verne v. N.Y.C. Dep't of Educ., No. 21-cv-5427, 2022 WL 4626533, at *17 (S.D.N.Y. Sept. 30, 2022).  There are therefore two issues: (1) whether plaintiff alleges she was treated "less well" and (2) if so, whether that treatment was partially due to gender discrimination.

Plaintiff hurdles the first issue easily.  The "treated less well" standard is the state and city analogue for the federal law's more onerous "adverse employment action" standard. See Baker v. Bridge Inc., 805 F. Supp. 3d 521, 548 (S.D.N.Y. 2025) (Under the NYCHRL and NYSHRL, a plaintiff "may prove an adverse employment action simply by showing that she was treated 'less well.'") (quotations omitted).  Termination is *per se* an adverse employment action, see Edelman v. NYU Langone Health Sys., 141 F.4th 28, 45 (2d Cir. 2025), and all adverse

employment actions satisfy the lower "treated less well" standard.  Because plaintiff predicates her discrimination claim on her termination, she properly alleged she was treated less well.

Plaintiff cannot hurdle the second issue, however, because she alleges nothing supporting her contention that her termination was partially due to gender discrimination.  Her main argument is that her complaint states that she was terminated "because of her gender," "as a result of her gender," or "on account of her gender."  This, of course, falls short.  Twombly, 550 U.S. at 544 ("a formulaic recitation of a cause of action's elements will not do.").

The facts that plaintiff does allege are not much help.  To show that her termination was discriminatory, plaintiff focuses heavily on the fact that she was the only female executive at Celitech.  But it is well settled that sole membership in a protected class does not make every disagreeable employment decision an act of discrimination.  See Mitchell v. Planned Parenthood of Greater N.Y., Inc., 745 F. Supp. 3d 68, 92 (S.D.N.Y. 2024) (The fact that plaintiff "was the first Black . . . man on [defendant's] executive-leadership team . . . by itself, does not indicate that any actions were motivated by [discrimination]"); Pattanayak v. Mastercard Inc., No. 22-1411, 2023 WL 2358826, at *2 (2d Cir. Mar. 6, 2023) (summary order) ("the fact that [plaintiff] was the only employee of a protected class in a department does not, standing alone, give rise to an inference of discriminatory motive.").

Plaintiff's better argument is that Fares' negative reaction to her taking leave suggests that he harbored some discriminatory animus, because her male colleagues took leave regularly without such pushback.  The problem is that Fares' negative reaction is not (and could not be) the impetus for her discrimination claim, because "the NYCHRL is not a 'general civility code.'" Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013).  If it were

plaintiff's theory that she was terminated because she took leave, she might have a viable claim based on her allegations that her male colleagues frequently took leave without issue.

That is not what plaintiff alleges, however. Plaintiff alleges that she was terminated because she complained about being "bombarded" with work requests while she was on leave. But firing an employee for trying to set work-life boundaries is just "poor management[,] not discrimination." See Hardial v. Emblemhealth, Inc., No. 14-cv-4968, 2016 WL 3693750, at *13 (E.D.N.Y. July 7, 2016); see Mihalik, 715 F.3d at 110 ("it is not enough that a plaintiff has an overbearing or obnoxious boss."); accord Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999) (A plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination."). Accordingly, the Court grants defendants' motion to dismiss plaintiff's gender discrimination claims against Celitech.

## C.    Hostile Work Environment

"For both her NYSHRL and NYCHRL hostile work environment claims, 'plaintiff must, at least, show that she was subjected to unequal treatment based upon membership in a protected class.'" Burkett v. Five Below, Inc., No. 25-cv-3847, 2026 WL 1018602, at *4 (E.D.N.Y. Apr. 15, 2026) (quotations omitted); see also Verne v. N.Y.C. Dep't of Educ., 697 F. Supp. 3d 30, 61 (S.D.N.Y. 2023) (A plaintiff must "prove[] by a preponderance of the evidence that she has been treated less well than other employees because of her [protected status]." (quotations omitted)).

Here, plaintiff alleges that she "was subjected to a pattern of hostile, abusive, and discriminatory conduct by Bratton," including "verbal abuse, intimidation, and . . . physical aggression . . . during company-sponsored travel, conferences, and work-related events." Because Bratton is a Co-Founder of Celitech, the Court will assume that Bratton's actions constitute actions by Celitech. See Griffin v. Sirva Inc., 835 F.3d 283, 291 (2d Cir. 2016) ("an individual is not . . . an employer [under the NYSHRL] unless he 'ha[s] an ownership interest' in

8

the employer or if the individual has 'the power to do more than carry out personnel decisions made by others.'").

Bratton's alleged "verbal abuse" does not establish a claim for hostile work environment. Although "offensive comments . . . can create a hostile work environment," Knox v. CRC Mgmt. Co., LLC, 134 F.4th 39, 51 (2d Cir. 2025), plaintiff never describes what Bratton actually said. For these kinds of claims, the content of the verbal abuse is the prototypical factual allegation that turns a conclusory assertion to a plausible claim for relief. See, e.g., Burkett, 2026 WL 1018602, at *2 (hostile work environment supported by allegations that an individual called plaintiff "Black bitch" and "Black witch"). In other words, without alleging what Bratton said, there is nothing suggesting that Bratton's "verbal abuse" was indicative of gender discrimination.

Bratton's other alleged behaviors – intimidation and physical aggression – are likewise insufficient to state a claim for hostile work environment. The law does "not authorize a hostile work environment claim for conduct that was merely offensive." Fitzgerald v. Henderson, 251 F.3d 345, 356-57 (2d Cir. 2001); see also Orantes v. D & J Exp. Inc., No. 24-cv-08423, 2026 WL 885231, at *5 (E.D.N.Y. Mar. 31, 2026) (No claim for hostile work environment based on the plaintiff's "naked allegations that [the defendant] 'created a hostile work environment, . . . 'taunted and harassed' her, . . . and 'verbally abus[ed] . . . and was . . . harsh' on [her]'").

Moreover, as with the verbal abuse, "plaintiff does not allege that much of the conduct of which she complains [] occurred because of . . . her sex." Borden v. City of N.Y., No. 23-cv-8330, 2025 WL 754147, at *6 (E.D.N.Y. Mar. 10, 2025); see also Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002) ("Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex.").

Plaintiff alleges nothing suggesting that Bratton's conduct – offensive as it may be – occurred because of plaintiff's gender, other than the mere fact that plaintiff is a woman.  As discussed above, that is not enough.  See Mitchell, 745 F. Supp. 3d at 92.  Accordingly, the Court grants defendants' motion to dismiss plaintiff's hostile work environment claims against Celitech.

### D.    Negligent Supervision and Retention

In New York, an action based on "an employer's retention and supervision of an employee" is simply a "negligence claim."  Moore Charitable Found. v. PJT Partners, Inc., N.Y.3d 150, 157, 195 N.Y.S.3d 436, 442 (2023).  However, "the exclusive remedy for negligence claims against an employer" is "the New York Workers' Compensation law." Arbouin v. Bob's Disc. Furniture, LLC, No. 20-cv-1893, 2021 WL 4813228, at *10 (E.D.N.Y. June 30, 2021), adopted, 2021 WL 4458932 (E.D.N.Y. Sept. 29, 2021).

On the other hand, the "Workers' Compensation Law has never been construed to bar tort actions against intentional tort-feasors," Hirsch v Mastroianni, 80 A.D.2d 633, 634, 436 N.Y.S.2d 87, 88 (2nd Dep't 1981), and thus "does not . . . preclude an employee's suit if the employer committed an intentional tort or another person committed such an intentional wrong at the employer's direction."  Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997).

Plaintiff believes that this "intentional tort exception" applies here.  Her theory is that Celitech is liable for failing to supervise Bratton, which enabled him to commit an intentional tort (assault) against her in Portugal.  That is a fundamental misunderstanding of the exception.

First, unlike in Hirsh, plaintiff's claim is not a "tort action against intentional tort-feasors."  80 A.D.2d at 634, 436 N.Y.S.2d at 88.  If it were, Bratton would be the defendant for this claim, not Celitech.  Second, plaintiff does not allege that Bratton "committed such an intentional wrong at [Celitech's] direction."  Torres, 116 F.3d at 640.  Plaintiff's claim is for

10

negligence, and the "exception is obviously not applicable[.]" Id.  Accordingly, the Court grants defendants' motion to dismiss plaintiff's negligent supervision and retention claim against Celitech.

**CONCLUSION**

Defendants' motion to dismiss is granted.

**SO ORDERED.**

Dated:   Brooklyn, New York
        April 21, 2026

*Brian M. Cogan*
_____
U.S.D.J.

11